**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

FEB 16 2021

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. APRIL DIANE MYRES, Defendant-Appellant. | No. 19-10415 D.C. No. 3:17-cr-00180-RS-1 MEMORANDUM* |

Appeal from the United States District Court
for the Northern District of California
Richard Seeborg, District Judge, Presiding

Argued and Submitted January 14, 2021
San Francisco, California

Before: WALLACE and M. SMITH, Circuit Judges, and LASNIK,** District Judge.

April Myres was convicted by a jury for mail fraud, in violation of 18 U.S.C. § 1341, and wire fraud, in violation of 18 U.S.C. § 1343. Myres' convictions stemmed from an insurance claim she filed after she reported a burglary at her home. Myres was sentenced to fourteen months' imprisonment. On appeal, Myres argues

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Robert S. Lasnik, United States District Judge for the Western District of Washington, sitting by designation.

that the district court made four errors in evidentiary rulings at trial and that the court erred in sentencing. Because the parties are familiar with the facts, we do not recount them in detail, except as necessary to provide context to our ruling. We have jurisdiction under 18 U.S.C. § 1291.

## I. Evidentiary Admissions at Trial

We review evidentiary rulings to admit or exclude evidence for abuse of discretion. *United States v. Alvirez*, 831 F.3d 1115, 1120 (9th Cir. 2016). Where an evidentiary error has occurred in a criminal prosecution, this Court reviews *de novo* whether the error "rises to the level of a constitutional violation." *United States v. Haischer*, 780 F.3d 1277, 1281 (9th Cir. 2015). We conclude that the district court properly denied Myres' evidentiary objections and constitutional challenges.

First, the district court did not commit constitutional error in allowing testimony from an insurance claims adjuster regarding his impression of Myres' response to a request that federal law enforcement agents made during a visit to Myres' home. Myres contends that admitting this testimony amounted to constitutional error based on *United States v. Prescott*, 581 F.2d 1343 (9th Cir. 1978). We held in *Prescott* that a "passive refusal to consent to a warrantless search is privileged conduct which cannot be considered as evidence of criminal wrongdoing." *Prescott*, 581 F.2d at 1351. Unlike testimony regarding law enforcement's breaking down of a door in *Prescott*, which we determined "would

lead to the conclusion that [the defendant] had refused permission to enter," *id.* at 1353, testimony about Myres' comment to the agents that "she didn't have time" for "something" they had asked her, does not lead to the conclusion that Myres refused a warrantless search. We decline to extend *Prescott* to testimony so vague that the jury could not reasonably connect it to constitutionally protected conduct.

Even if, *arguendo*, the testimony in question were considered a comment on the exercise of Myres' Fourth Amendment rights, the testimony was admitted for a proper purpose: to undermine Myres' theme that she was the victim of a burglary. *See Leavitt v. Arave*, 383 F.3d 809, 828 (9th Cir. 2004) (holding that a prosecutor was entitled to question a defendant's theme of cooperation by showing that defendant was in fact uncooperative).

Second, the district court did not commit constitutional error in allowing testimony from a law enforcement officer regarding Myres not responding to the officer's calls after she had invoked her right to counsel. Myres relies upon two cases that concern comments referencing a defendant's retention of counsel. *See Bruno v. Rushen*, 721 F.2d 1193 (9th Cir. 1983); *United States v. Kallin*, 50 F.3d 689 (9th Cir. 1995). The witness testimony Myres takes issue with, however, does not contain any comments regarding Myres' retention of counsel. Moreover, the government did not elicit testimony regarding Myres retaining an attorney, and the government never implied that retaining an attorney was a sign of guilt. *Cf. Kallin*, 50 F.3d at 693–94;

3

*Bruno*, 721 F.2d at 1194–95. Therefore, the district court did not err in admitting this testimony.

Third, the district court did not abuse its discretion in admitting a recording of a jail call between Myres and her ex-boyfriend, Antoine Fowler. A district court has "'wide latitude' in determining admissibility of evidence under Rule 403 . . . and its decision is accorded considerable deference." *United States v. Joetzki*, 952 F.2d 1090, 1094 (9th Cir. 1991) (citation omitted). Myres made statements in the call that tended to show that she was aware that Fowler faced danger upon his release from jail. These statements had probative value because they made it more likely that Myres knew Fowler would seek out a firearm for protection, which was relevant to the charges the government was trying to prove. Although other witness testimony established that Fowler was a known "snitch," it did not get as directly at Myres' expectation that Fowler would face danger upon his release. Myres argued that the call was unfairly prejudicial, but when viewed in the context of Fowler's own behavior toward Myres, the call did not unfairly vilify Myres.

Fourth, the district court did not abuse its discretion when it permitted testimony regarding a court order prohibiting Myres from possessing a firearm. In particular, the testimony concerned Myres' employer, the San Francisco Sheriff's Department (SFSD), repossessing a firearm from Myres as a result of a court order. This testimony was probative because it tended to show that Myres was aware she

4

was not the owner of the firearm; rather, she understood that SFSD was the owner. Given that Myres wrote on her second proof of loss to her insurer that SFSD equipment became hers after four years of service, her understanding of the firearm's ownership was relevant to evaluating her intent in making this statement. Additionally, the likelihood of unfair prejudice was slight because the reference to the court order was brief, and it was unlikely to provoke an emotional response where the jury learned that the confiscated firearm was eventually returned to Myres. *See United States v. Fagan*, 996 F.2d 1009, 1015 (9th Cir. 1993) (concluding that a "brief reference to [the defendant's] gang membership was not likely to provoke an emotional response in the jury").

The district court did not commit constitutional error, and it acted within its discretion to admit the evidence Myres challenges on appeal. While the district court faced challenging legal questions, it issued thoughtful rulings to ensure Myres received a fair trial. *See Ross v. Oklahoma*, 487 U.S. 81, 91 (1988) (observing that the "Constitution entitles a criminal defendant to a fair trial, not a perfect one").

II. <u>Sentencing</u>

We review the district court's interpretation of the Guidelines issued by the United Sentencing Commission (the Guidelines) *de novo*, application of the Guidelines to the facts for abuse of discretion, and factual findings for clear error. *United States v. Staten*, 466 F.3d 708, 713 (9th Cir. 2006). We conclude that the

district court erred when it failed to make findings on the record regarding Myres' intent with respect to the amount of intended loss.

When a defendant has committed fraud, the base offense level increases consistent with the amount of "loss." *See* U.S.S.G. § 2B1.1. The Guidelines define "loss" as "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, cmt. n.3 (A). The amount of "intended loss" is equivalent to "the pecuniary harm that the defendant purposely sought to inflict."[1] U.S.S.G. § 2B1.1, cmt. n.3 (A)(ii). The government must "prove the loss by a preponderance of the evidence." *United States v. Walter-Eze*, 869 F.3d 891, 912 (9th Cir. 2017) (quoting *United States v. Torlai*, 728 F.3d 932, 946 n.13 (9th Cir. 2013)). A district court may "impose sentencing enhancements only for losses that 'resulted from' the defendant's fraud." *United States v. Berger*, 587 F.3d 1038, 1043 (9th Cir. 2009) (quoting *United States v. Hicks*, 217 F.3d 1038, 1048 (9th Cir. 2000)).

The district court's responses to defense counsel during sentencing suggested that the court considered Myres' motives irrelevant, and the court did not provide explicit reasoning or factual findings to support its conclusion that the intended loss was the entire claim. Accordingly, we must vacate the sentence and remand for the

---

[1] The amount of intended loss also "includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value)." U.S.S.G. § 2B1.1, cmt. n.3 (A)(ii).

district court to explain fully its reasoning. *See United States v. Jimenez-Ortega*, 472 F.3d 1102 (2007) (remanding where sentencing court failed to make a finding about the materiality of defendant's false statements).

**AFFIRMED IN PART, VACATED AND REMANDED IN PART.**